RONALD L. BARBER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barber v. Commissioner
Docket No. 5823-76.
United States Tax Court
T.C. Memo 1980-39; 1980 Tax Ct. Memo LEXIS 546; 39 T.C.M. (CCH) 1026; T.C.M. (RIA) 80039; February 12, 1980, Filed John J. Hentrich, for petitioner. David P. Fuller, for respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency in income tax due from the petitioner for the taxable year 1972 in the amount of $147,682 together with the addition to the tax under section 6653(b) [1] in the amount of $73, 841. At the trial, respondent conceded that the determination should be reduced on account of respondent's overstatement of unreported income attributable to the petitioner. The issue to be decided is whether petitioner is chargeable with income in the amount of $206,566 for the taxable year 1972 on account of his participation in a burglary of the Laguna Niguel branch *547 of the United California Bank and, if so, whether petitioner's failure to include such income in his individual income tax return for that year constituted a fraudulent omission of income on account of which the penalty is applicable under section 6653(b). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The petitioner, Ronald L. Barber, resides in Anaheim, California. During the taxable year 1972 he resided at 9803 San Carols Avenue, South Gate, California. Petitioner filed a timely United States Individual Income Tax Return, Short Form 1040A, for the taxable year 1972. Said return, and the accompanying Form W-2, reported taxable wage income received from Paramount General Hospital in the amount of $1,599.75 for 1972. The return disclosed no other income from any source for 1972. At the time the petition herein was filed, the petitioner was confined at the Medical Center for Federal Prisoners, Springfield, Missouri. During the weekend of March 24-27, 1972, certain individuals entered the vault of the United California Bank's Laguna Niguel branch and stole and *548 contents of numerous safe deposit boxes and a sum of bank cash. The total cash and value of the property taken from the bank was determined to be $2,155,531. Some of this property was later recovered in a filed in Ohio. As of the date of the trial of this case, the total unrecovered property from the above-mentioned robbery of the United California Bank's Laguna Niguel branch was $1,445,961, computed as follows: Lost bank cash
$ 45,256.00
Lost boxholder property
1,400,705.00
TOTAL
$1,445,961.00
An indictment was filed on July 3, 1972, in the United States District Court for the Central District of California (No. 10652CD). Said indictment charged Charles Albert Mulligan, Ronald Barber, Harry James Barber, Philip Bruce Christopher and Amil Alfred Dinsio with conspiracy, bank burglary, larceny of a national Bank, and receiving property stolen from a national bank. Charles Broeckels, also known as G. Richards, was named as an unindicted co-conspirator. The indictment in No. 10652CD was later dismissed as to Ronald Barber and Harry James Barber on March 19, 1973. Amil Alfred Dinsio, Charles Albert Mulligan and Philip Bruce Christopher were tried on the above *549 charges and found guilty of conspiracy in violation of 18 U.S.C. sec. 371; bank burglary in violation of 18 U.S.C. sec. 2113(a); and larceny of a national bank in violation of 18 U.S.C. sec. 2113(b). On January 31, 1973, another indictment was filed in the United States District Court for the Central District of California with respect to the aforesentioned robbery of the United California Bank's Laguna Niguel branch (No. 11874CD). This indictment charged Ronald Barber, Harry James Barber, and James Frank Dinsio with conspiracy, bank burglary, and larceny of a national bank. Charles Broeckels, also known as G. Richards, was again named as an unindicted co-conspirator. Ronald Barber, the petitioner herein, and James Frank Dinsio was tried on the above charges and found guilty of conspiracy in violation of 18 U.S.C. sec. 371, and larceny of a national bank in violation of 18 U.S.C. sec. 2113(b). Harry James Barber fled before trial and remains a fugitive. The defendants in Nos. 10652CD and 11874CD appealed their convictions on the aforementioned charges to the United *550 States Court of Appeals for the Ninth Circuit. On January 4, 1974, and June 4, 1974, respectively, the Ninth Circuit entered orders affirming the judgments of the district court in Nos. 10652CD and 11874CD. The proof adduced at the trials of the petitioner and other defendants convicted as participants in the burglary of the Laguna Niguel branch of United California Bank was included as follows: Harry James Barber was the petitioner's brother. Amil Alfred Dinsio and James Frank Dinsio were the petitioner's uncles. Charles Albert Mulligan was the brother-in-law of either Amil or James Dinsio. Harold Dawson was a friend of Albert Mulligan from the Marine Corps. Philip Bruce Christopher and Charles Broeckels were unrelated to the petitioner. On February 17, 1972, Amil Dinsio and Charles Mulligan flew from Cleveland, Ohio, to Los Angeles. On February 18, Amil Dinsio and Mulligan registered at the Jubilee Motor Inn in Lynwood, California. The registration cards listed a Ford LTD with California license plates. This vehicle was registered to the petitioner. On February 29, 1972, a person using a fictitious name and address purchased a 1962 Oldsmobile from a private seller, *551 William Sublett, in Long Beach, California. Mr. Sublett had received a phone call earlier in the day from a prospective buyer. Petitioner Ronald Barber's telephone records showed a phone call to Mr. Sublett on February 29, 1972. On March 5, 1972, James Dinsio made a down payment of $1,000.00 in cash on a 19-foot ski boat sold by a private owner in Downey, California. On March 7, 1972, petitioner Ronald Barber and Harry Barber rented a condominium apartment in Laguna Niguel, California, located approximately 1-1/2 miles from the United California Bank's Laguna Niguel branch. The lease was for a term of three months at a rental rate of $300.00 per month. The lease was executed the following day, March 8, by petitioner Ronald Barber, and he took possession on that date. The same date, Amil Dinsio and Charles Mulligan checked out of the Jubilee Motor Inn in Lynwood, California. On Saturday, March 25, 1972, during the day-time, James Dinsio completed the purchase of the ski boat by paying the seller $4,200.00 in cash and having the boat delivered to the "Barber" residence in South Gate. On Monday morning, March 27, 1972, after the burglary, but before it had been discovered, *552 Charles Mulligan and Amil Dinsio stopped by the house of Harold Dawson. A few minutes later, the petitioner arrived. The three men stayed for approximately 30 minutes. Shortly after the weekend of March 24-27, 1972, the petitioner's brother, his uncles, Charles Mulligan, Philip Christopher and Charles Broeckels all returned to Ohio. In early April 1972, the petitioner drove from California to Youngstown, Ohio, towing the ski boat. The petitioner remained in Ohio for about four days and while there met with his brother, Harry Barber, and his uncles, Amil and James Dinsio. A neighbor who lived directly above the condominium apartment described above observed four to five men and a woman move into the apartment in March of 1972. The same neighbor saw the same individuals leave the apartment carrying luggage a few days later. One of the persons seen living at the apartment was the petitioner. The petitioner told the neighbor that he was from Ohio, and that he and his brother were looking for work in the construction field. The neighbor also saw a man resembling James Dinsio at the apartment. Both the woman who rented the condominium apartment to the petitioner, and the *553 owner, entered the apartment on a number of occasions after its rental. They found that the apartment appeared to be unoccupied most of the time. On June 7, 1972, after the three-month lease had expired, the owner retook possession of the condominium apartment. During the cleaning of the apartment, the owner discovered five work gloves covered with white powder. The same type of work gloves had been found near the bank during the crime scene search and also in the Oldsmobile described above. Fingerprint lifts from glasses and dishes left in the Laguna Niguel condominium disclosed the fingerprints of petitioner Ronald Barber, as well as those of Amil Dinsio, Albert Mulligan, Philip Christopher and Harry Barber. On June 2, 1972, a search warrant was issued authorizing the search of the 1962 Oldsmobile now parked in Harold Dawson's garage. A search pursuant to the warrant disclosed that the Oldsmobile was equipped with a false-bottom compartment in the trunk area. Below the false bottom were several blue "AWOL" bags containing numerous burglary tools. Among the items seized from the Oldsmobile were a custom-made sledge hammer similar to the tool used to punch out the lock *554 devices of safe deposit boxes at the Laguna Niguel bank; three gold coins in a container or holder (both the coins and the holder were substantially similar to those removed from one of the safe deposit boxes broken into at the bank; a flashlight which bore a fingerprint of Amil Dinsio on one of its two batteries; a Jersey Maid ice cream bag which bore a fingerprint by petitioner Ronald Barber; walkie-talkies; a Department of Motor Vehicles suspense report which bore the fingerprints of Harry Barber; and a Tilden brand concrete core drill bit identical to one found at the bank and to another one found during the search of the apartment of James Dinsio and Harry Barber in Boardman, Ohio, on June 27, 1973. On June 28, 1972, FBI agents, armed with a search warrant, searched the petitioner's South Gate apartment. The agents seized a short-wave radio capable of picking up police frequencies. Shortly after Charles Mulligan's arrest on June 2, 1972, the petitioner left his apartment in South Gate, California, and traveled to Rochester, New York. He was arrested on January 15, 1973, in an apartment in Rochester. In his notice of deficiency, the respondent determined that petitioner *555 had realized income during the taxable year 1972 as a result of the burglary of the Laguna Niguel branch of the bank in the amount of $307,933, being one-seventh of the total value of cash and property of $2,155,531 originally taken from the bank. Upon subsequent recovery of a portion of the stolen property, respondent now claims that the amount taxable to the petitioner was $206,566, or one-seventh of the unrecovered cash and property valued at $1,445,961. ULTIMATE FINDINGS OF FACT Upon consideration of the evidence presented at the trial of this case, including the testimony of the petitioner, the Court finds as ultimate findings of fact the following: (1) The petitioner had prior knowledge of and was a participant in the burglary of the Laguna Niguel branch of the United California Bank between March 24 and March 27, 1972, as a result of which property having a value of $2,155,531 was taken from that bank. (2) As a result of the petitioner's participation in the burglary of the Laguna Niguel branch of the United California Bank on March 24-27, 1972, petitioner either received or would ultimately be entitled to receive one-seventh of the proceeds of the burglary. (3) *556 The failure of petitioner to report any income from the proceeds of the burglary of the Laguna Niguel Branch of the United California Bank on March 24-27, 1972, in petitioner's individual income tax return for the calendar year 1972 was not due to fraud with intent to evade tax within the meaning of section 6653(b). OPINION During the weekend of March 24-27, 1972, the Laguna Niguel branch bank was broken into and cash and property valued at $2,155,531 was taken from that bank. Petitioner was found guilty of conspiracy in violation of 18 U.S.C. sec. 371 and larceny of a national bank in violation of 18 U.S.C. sec. 2113(b). The conviction was affirmed by the U.S. Court of Appeals for the Ninth Circuit. Respondent thereupon argues that the petitioner is collaterally estopped from denying his felonious involvement in the burglary. Rule 39 of the Tax Court Rules of Practice and Procedure provides that the party seeking to invoke collateral estoppel must set forth such matter in his pleading. In view of respondent's failure to comply with Rule 39, the Court will not invoke collateral estoppel to prevent the petitioner from denying his *557 participation in the burglary. [2] However, considering the evidence, the Court is convinced that petitioner knew of the plans to burglarize the bank and participated therein. On behalf of petitioner, counsel also argues that the notice of deficiency in this case is arbitrary and capricious in that respondent had no basis for determining that the "loot" was divided equally among the seven participants. Accordingly, counsel argues that no presumption of correctness should attach to the respondent's determination with respect to the amount of income taxable to petitioner. Since the appeal from a decision in this case will lie in the U.S. Court of Appeals for the Ninth Circuit, we will be guided by the recent decision of that Court in Weimerskirch v. Commissioner,596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977). In the Weimerskirch case, the respondent determined that the taxpayer had unreported income from the sale of narcotics. Respondent had no proof that the taxpayer had actually been engaged in such activities during the taxable year. Because of the absence of *558 such proof, the appellate court held that the notice of deficiency was not entitled to the presumption of correctness. Implicit in that decision, was the premise that if respondent had proof of the illegal activity on the part of the taxpayer, the resulting determination of the income realized from the illegal activity on the basis of the best information available to the respondent would be entitled to the presumption of correctness. In other words, as we interpret the Weimerskirch case, once the respondent can show that a taxpayer was engaged in an illegal activity, the inability of the respondent to determine with exactitude the income from such activity does not destroy the presumption which attaches to the notice of deficiency. See also Jackson v. Commissioner, 73 T.C.     (Nov. 28, 1979). At the trial before this Court, petitioner testified that he had no knowledge of the plans to rob the Laguna Niguel branch of the bank, was unaware at the time that such robbery had taken place and did not at any time receive any of the proceeds thereof. On brief, petitioner's attorney argued that petitioner's role in the robbery was "minor" and it was unreasonable to assume that *559 the petitioner shared equally with the other participants in the proceeds of the robbery. In this case, the Court has found as a fact that petitioner was a participant in the burglary of the Laguna Niguel branch bank. Simply stated, the Court does not accept the petitioner's denial of any involvement in the burglary. In the absence of any other basis for allocating the "loot" between the participants, respondent was justified in assuming that all shared equally. Petitioner offered no proof to rebut this assumption, except for his bare denial of having participated to any degree. Although except for one--petitioner's brother, who was a fugitive from justice--the other participants had likewise been convicted and presumably could have testified in refutation of the respondent's determination without risk of further criminal prosecution, petitioner did not offer such testimony. Not only do we find that respondent's determination that the "loot" was shared equally is entitled to the presumption, but on the basis of the present record, independently of that presumption the Court would have no recourse except to reach the same conclusion. Finally, respondent contends that petitioner's *560 failure to report any income from the burglary of the Laguna Niguel branch bank in his individual income tax return for the taxable year 1972 constituted "fraud" within the meaning of section 6653(b). With respect to this issue, respondent has the burden of proof by "clear and convincing evidence." Section 7454(a); Tax Court Rule 142(b). While the record in this case will support a finding that petitioner was a participant in the burglary of the Laguna Niguel branch bank, and was thereby entitled to a share in the "loot" taken from that bank, the respondent has not shown that petitioner has received his share. Petitioner testified with respect to his limited financial resources and we have no reason to doubt that testimony. It is equally clear that the proceeds from the burglary, except possibly for a relatively small amount of cash, were transported to Ohio. A portion of the proceeds was found buried in a field there. It can be only assumed that there had been no division of the proceeds prior to the petitioner's arrest for the burglary on January 15, 1973. In fact, before there could be a division of the "loot", and prior to the close of the taxable year 1972, petitioner *561 had every reason to believe that he would soon be apprehended for his part in the burglary. Under such circumstances, his failure to report his share, which might never be received, does not constitute proof of fraud by "clear and convincing evidence" within the meaning of section 6653(b). Respondent has clearly failed to sustain this burden. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. See Fahey v. Commissioner,T.C. Memo 1979-20↩.